IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDMUNDO VARGAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 22 C 3613 ) ) Judge Joan H. Lefkow |
| COMMONWEALTH EDISON COMPANY, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Edmundo Vargas brings this action against his former employer, Commonwealth Edison Company ("ComEd"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*, and the Civil Rights Act of 1866,[1] 42 U.S.C. § 1981.[2] Vargas, who is Mexican American, alleges he suffered unlawful discriminatory treatment and a hostile work environment on the basis of race and national origin, as well as retaliation for protected activities. ComEd moves for summary judgment on all claims under Federal Rule of Civil Procedure 56. (Dkt. 46.) For the following reasons, ComEd's motion is granted.

**FACTUAL BACKGROUND**

When considering a motion for summary judgment, the court relies on the factual assertions and objections contained in the parties' Local Rule 56.1 submissions.[3] The court is

---

[1] As amended by the Civil Rights Act of 1991.

[2] This court has jurisdiction under 28 U.S.C. §§ 1331, 1343. Venue is proper under § 1391(b)(2).

[3] This decision cites to docket entries in the following manner: ComEd's Local Rule 56.1(a)(2) statement of facts (dkt. 48) is cited as "DSOF ¶ _"; Vargas's Local Rule 56.1(b)(2) response (dkt. 53) is

entitled to strict compliance with Rule 56.1 procedures. *See Curtis* v. *Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015); *Stevo* v. *Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011). Below are the relevant and properly supported factual assertions based on the undisputed facts as admitted by the parties or, if an objection to an asserted fact was raised, based on this court's review of the underlying evidence cited in support of or in opposition to that fact. *See Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). If a submitted fact is not included below, it is either immaterial, provides no useful context, or is unsupported by the evidence submitted.

## I. Vargas's Employment and 2022 Termination

Vargas, who is Mexican American, began his employment with the energy company as a meter reader in 2007. (R–PSOAF ¶¶ 1, 3, 17.) In 2013, he started working as a Driver in the Heavy Hauling Department in 2013. (*Id.*) In September 2015, Vargas became a B Mechanic in Heavy Hauling. (*Id.*) From September 2018 until his termination in March 2022, he worked as an A Mechanic. (*Id.*)

From 2013 until April 2020, Vargas was directly supervised by Larry Mason, a White man of unspecified national origin, who died of COVID-19 at the beginning of the pandemic. (R–DSOF at ¶ 12; R–PSOAF ¶ 3.) Ted Maldonado, who is of Puerto Rican background, was also a supervisor in Heavy Hauling during this time and, after Mason died, shared supervisory responsibility over Vargas with Gerald Haymer, a Black man of unspecified national origin. (R–PSOAF ¶ 3.) Dan Ross, a White man of unspecified national origin, also worked as a supervisor in the department and served on the committee that assigned disciplinary action to Vargas several times. (*Id.* ¶¶ 3–4.) While subordinate employees like Vargas had direct supervisors, the

---

cited as "R–DSOF ¶ _"; Vargas's Local Rule 56.1(b)(3) statement of additional facts (dkt. 54) is cited as "PSOAF ¶ _"; and ComEd's Local Rule 56.1(c)(2) response (dkt. 58) is cited as "R–PSOAF ¶ _".

employees in Heavy Hauling were generally overseen by all of that department's supervisors, typically three at any one time. (*Id.* ¶ 2.) It was well known throughout the department during this period (2013 to 2022) that Vargas was of Mexican ancestry. (*See id.* ¶¶ 3, 17, 39, 51.)

During his nearly nine-year tenure in Heavy Hauling, Vargas compiled a lengthy disciplinary record, including job performance counseling in July 2021 and suspensions in May 2015, April 2018, January 2020, November 2020, and February 2022. (R–DSOF ¶¶ 43–44, 47–49, 52–54, 58–63; R–PSOAF ¶ 25.) This record culminated in Vargas's March 2022 termination on the recommendation of Matthew Tassone, ComEd's director of supply operations. (R–DSOF ¶ 63.)

On February 16, 2022, Vargas left work slightly early without obtaining permission and refused to return to the worksite for a mandatory overtime assignment when Haymer texted him. (*Id.* ¶¶ 58–59.) A disciplinary factfinding meeting followed, during which Vargas told Ross that he would "regret" calling the meeting. (*Id.* ¶ 60.) When Ross asked if Vargas was threatening him, Vargas replied, "It's not a threat, it's a fact." (*Id.*) This confrontation resulted in a second disciplinary factfinding meeting—this one by ComEd Corporate Security—which resulted in Vargas's 2022 suspension. (*Id.* ¶ 61.) The March 1 report generated by Corporate Security concluded that Vargas had violated company policies by making threatening statements in the factfinding meeting and submitting false time records for his work on February 16. (*Id.* ¶¶ 62–63.) Based on this report and Vargas's "total disciplinary record," Tassone recommended Vargas be terminated. (*Id.* ¶ 63.) ComEd's Executive Termination Committee approved Tassone's recommendation and fired Vargas on March 30, 2022. (*Id.* ¶¶ 2, 63.)

II.     **The 2015 Incident**

Long before his 2022 termination, Vargas was the victim of repeated racist incidents while employed at ComEd. (R–PSOAF ¶¶ 39, 51.) The circumstances surrounding one of those incidents, which occurred in 2015, are central to Vargas's opposition to summary judgment. (*See* dkt. 52 at 16–19.)

In 2014 and 2015, Vargas complained to both Mason and Maldonado that his coworker, Ken Giza, had, among other things, threatened to "kick his ass," called him a "wetback,"[4] and texted him derogatory anti-Mexican memes. (R–PSOAF ¶¶ 39–40.) For complaining about this treatment, supervisor Maldonado called Vargas "a pussy." (*Id.* ¶ 39.) And while Maldonado denies calling Vargas a liar when he reported the abuse, ComEd does not dispute the overall substance of the abusive conduct, including the use of slurs. (*Id.* ¶¶ 39–40.) Eventually, after Vargas produced the text messages to Human Resources, Giza was suspended for five days. (*Id.* ¶ 40.) At deposition, Maldonado testified that Giza's suspension angered Mason and strained Heavy Hauling, which needed more workers at the time. (*Id.* ¶ 41.)

In May 2015, not long after Giza was suspended, Vargas himself received a five-day suspension. Prior to Vargas's suspension, Vargas and another employee had been specifically instructed to take a *single-axle* tractor to deliver a 3,000-gallon tank to a ComEd substation in Chicago; instead, they intentionally took a *double–axle* tractor. (R–DSOF ¶¶ 44–45; R–PSOAF ¶ 8.) While attempting to maneuver the heavier tractor down a narrow alley, Vargas struck a utility pole, snapping off the driver's side-view mirror. (R–DSOF ¶ 45; R–PSOAF ¶¶ 8–9.) Vargas returned the tractor to the garage but did not directly inform Mason about the broken mirror. (R–

---

[4] This term is considered a derogatory epithet for a Latino person living in the United States. *See* Marisa Gerber, *Slur Has a Complex Translation in Latino Community*, L.A. Times (Apr. 1, 2013), https://www.latimes.com/local/lanow/la-xpm-2013-apr-01-la-me-ln-wetback-20130401-story.html; *Wetback*, MERRIAM–WEBSTER DICTIONARY (11th ed. 2020) ("an insulting and contemptuous term").

4

DSOF ¶ 46; R–PSOAF ¶ 9.) Instead, Vargas filled out a repair ticket and left it on Mason's desk. (*Id.*) Bill Medina—who worked with Vargas starting in 2019—provided a declaration indicating that he believed it was common practice to handle this sort of damage incident by submitting a repair ticket, and it was not necessary to report such damage directly to supervisors. (R–PSOAF ¶ 5.) Nonetheless, Vargas's conduct—deliberately taking the wrong vehicle and not directly informing his supervisor about the attendant damage—resulted in Vargas's 2015 suspension. (*Id.* ¶¶ 8–10.) Both Maldonado and Mason took part in the decision to issue this discipline. (*Id.* ¶ 10.) In his deposition, Maldonado testified that in the 20 years he had worked as a ComEd supervisor, he could not remember another instance of an employee receiving a five-day suspension as their first disciplinary action. (R–PSOAF ¶ 10.)

Vargas testified in his deposition that, when Mason delivered Vargas's suspension letter, Mason said that he had hoped to fire Vargas for bringing attention to Heavy Hauling with his complaint about Giza, but Human Resources would not allow Mason to do so because Vargas had no disciplinary record. (*Id.* ¶ 42.) Maldonado's deposition testimony is somewhat consistent: he testified that Mason was frustrated with Giza's suspension and said something akin to, "I can't believe [Vargas] did that. You know, I can't believe that he turned [Giza] in." (*Id.* ¶ 41.) The suspension was Vargas's first demerit, and the tension surrounding the report of Giza's race-based harassment was Vargas's only conflict with a supervisor. (*Id.* ¶ 43.) Yet Vargas believed that his supervisors would be aiming to fire him "eventually." (*Id.* ¶ 42.)

The 2015 incident was not the only time Vargas was subjected to racial invective while working at ComEd. A second incident involved Mason himself—a supervisor—as opposed to a coworker. Sometime during 2018 or 2019, Vargas was doing "oil work," which he viewed as beneath him, a "form of punishment." (*Id.* ¶¶ 50–51.) When more junior employees arrived,

5

Vargas called Mason to ask if he could pass this undesirable work off to them. (*Id.*) Mason "exploded," calling Vargas a "stupid mother fucker" and a "spic." (*Id.* ¶ 51.) Although Mason later called Vargas to apologize for his behavior, there is no indication in the record that Mason was ever formally disciplined for using the racial slur. (R–DSOF ¶ 68; R–PSOAF ¶ 51.)

**III.     Vargas's Other Protected Activities**

Vargas's internal racial-harassment complaint against Giza was not the only time that Vargas engaged in statutorily protected activity. In 2019 and 2021, Vargas filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (R–PSOAF ¶ 45.) He also made a few additional "internal complaints" against Maldonado, whom Vargas believes harbored racial animus toward him because Maldonado is part of a "generation" of Puerto Ricans who are "very hostile towards Mexicans." (R–DSOF ¶¶ 66–67; R–PSOAF ¶ 46.) These complaints, Maldonado admitted, "bothered me." (R–PSOAF ¶ 46.)

While not germane to the ultimate legal conclusion of this court, for reasons outlined below, Vargas further alleges a series of additional indignities (all of which are disputed by ComEd), including that he was singled out for poor masking during the height of the COVID-19 pandemic; that he was disproportionally assigned unfavorable work tasks in the oil house and Maldonado called him a "pussy crybaby" for objecting to it; that he was assigned to work out of grimy trailers during the pandemic; that he was denied desired overtime (or was forced to work undesired overtime); and that he was asked to report for "fitness for work" evaluations more consistently than others when calling off sick, which he did with some regularity. (R–DSOF ¶¶ 27–31; R–PSOAF ¶¶ 12–15, 26–28, 48–49, 50–51.)

6

## **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant has the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). To defeat the motion, the nonmovant must then show a genuine, material factual dispute supported by "proper documentary evidence." *Weaver* v. *Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (quoting *Beardsall* v. *CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020)). The court views the facts and draws all reasonable inferences therefrom in favor of the nonmovant. *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nonetheless, summary judgment is "put up or shut up" time. *Reed* v. *Brex, Inc.*, 8 F.4th 569, 578 (7th Cir. 2021) (quoting *Beardsall*, 953 F.3d at 973). The nonmovant must do more than raise "some metaphysical doubt" in the mind of the court to advance to trial. *Matsushita*, 475 U.S. at 586. Rather, that party "must present affirmative evidence" to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the nonmovant is unable to "establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial," the court must grant summary judgment. *Lesiv* v. *Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (quoting *Celotex*, 477 U.S. at 322) (cleaned up).

# ANALYSIS

I. **Discrimination (Counts I and III)**

In his Amended Complaint, Vargas alleges that he was subject to discriminatory treatment because of his race and national origin—namely his status as a Mexican American—in violation of Title VII and Section 1981. (Dkt. 14 at 6–9.) Vargas now explicitly abandons these claims in his opposition briefing. (Dkt. 52 at 16 n.1.) The court therefore grants ComEd summary judgment on Counts I and III. *See Mach* v. *Will Cty. Sheriff*, 580 F.3d 495, 501–02 (7th Cir. 2009) (recognizing claims may properly be abandoned at summary judgment stage).

II. **Hostile Work Environment**

In his Amended Complaint, Vargas repeatedly alleges that he was subject to a "hostile work environment," clearly indicating that he intended to pursue such a claim. (*See* dkt. 14 ¶¶ 11, 24, 30, 37, 44.) In light of these repeated references to a "hostile work environment," ComEd dedicates more than half of its opening brief to arguing that it is entitled to summary judgment on a stand-alone hostile work environment claim. (Dkt. 47 at 2–13.) Vargas, however, does not respond to these arguments *at all*. (*See* dkt. 52.) The court therefore finds that this claim is waived. *See Sanchez* v. *BCTGMI Local #1*, No. 20 C 1782, 2021 WL 1853305, at *5 (N.D. Ill. May 10, 2021) (even flawed or muddy complaints suffice to preserve hostile work environment claims if defendant is put on notice); *Nichols* v. *Mich. City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014) (nonmovant waives arguments not made in response to movant's motion for summary judgment). *See also Bradley* v. *Vill. of Univ. Park*, 59 F.4th 887, 897–98 (7th Cir. 2023); *Edward E. Gillen Co.* v. *City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993). The court therefore grants ComEd summary judgment on Vargas's hostile-work-environment claim.

### III. Retaliation (Counts II and IV)

Vargas's only remaining claim is that ComEd retaliated against him for activity protected under Title VII and Section 1981. To survive summary judgment, Vargas must demonstrate that a reasonable jury could find (1) that he engaged in statutorily protected activity; (2) that his employer, ComEd, took materially adverse action against him; and (3) that there was a causal connection between the protected activity and the adverse employment action. *Malin* v. *Hospira, Inc.*, 762 F.3d 552, 558 (7th Cir. 2014). With respect to causation, a reasonable jury must be able to determine that the protected activity was the "but-for" cause of the adverse action. *Univ. of Tex. S.W. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 360 (2013) (holding Title VII retaliation claims require "but-for" causation); *Dunn* v. *Nordstrom, Inc.*, 260 F.3d 778, 784 (7th Cir. 2001) (same standard applies to retaliation claims under Section 1981).

It is undisputed that Vargas engaged in protected activity, including the racial harassment complaint he views as leading to his 2015 suspension, additional internal complaints, and charges he filed with the EEOC in 2019 and 2021. *See Tomanovich* v. *City of Indianapolis*, 457 F.3d 656, 663–64 (7th Cir. 2006) (internal complaints and EEOC charges may constitute protected activities). Likewise, it is undisputed that Vargas suffered an adverse employment action, his termination.[5] *See Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742, 761 (1998) (discussing different adverse actions). The court therefore focuses its analysis only on causation.

At the threshold, the court must resolve a dispute over what events may be considered when looking for a causal connection between protected activities and Vargas's 2022 termination. It is undisputed that ComEd predicated Vargas's 2022 termination on his "total disciplinary record." (R-DSOF ¶ 63.) ComEd argues, however, that the court cannot take into

---

[5] Although Vargas was subject to several potential adverse actions during his time at ComEd, Vargas's arguments expressly focus solely on his termination. (Dkt. 52 at 16.)

9

account Vargas's 2015 suspension—which Vargas believes was retaliatory for his complaints about Giza—because that suspension falls well outside the applicable statute of limitations and Vargas did not exhaust administrative remedies with respect to the 2015 incident. (Dkt. 47 at 18.)

Vargas does not dispute that his 2015 suspension, "as an independent basis for liability, is time barred." (Dkt. 52 at 16.) He argues, however, that if "a reasonable trier of fact could find that his 2015 … suspension was retaliatory" and that ComEd "would not have terminated [him] had it not been for that suspension," then his suspension may be considered as the but-for cause of his termination "even though the 2015 suspension occurred outside the statute of limitations." (*Id.* at 16–17.) In other words, Vargas believes that ComEd's admission that his termination was based on his "total disciplinary record" means that Vargas may "reach beyond the statute of limitations" to establish causation. (*Id.* at 16.)

ComEd rejoins, first, that Vargas has waived this argument by failing to cite to any legal authority for the proposition that ComEd can be liable for considering an otherwise time-barred adverse action in its 2022 termination decision and second, that even if the argument is not waived, the allegedly retaliatory 2015 suspension is still a "discrete act" that cannot be considered a but-for cause of Vargas's termination. (Dkt. 57 at 3, 5–6.)

It is true that Vargas cites no authority—legal, academic, or otherwise—to support his argument that the "2015 suspension is still very much at issue." (*See* dkt. 52 at 16–19.) It is also true that if a reasonable trier of fact could find that suspension retaliatory and a "but-for" cause of his firing, then the 2015 suspension may elude the statute of limitations. (*Id.*) Such arguments that are "unsupported by legal authority" are indeed waived, see *Schaefer* v. *Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016), and the court agrees with ComEd that Vargas has waived the argument here.

10

Yet even if Vargas had not waived this argument, it would fail because it attempts to improperly bootstrap an otherwise time-barred "discrete act" onto a timely retaliation claim. Suspensions from work are "discrete acts." *Bass* v. *Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839–40 (7th Cir. 2014). If a plaintiff does not file a charge with the EEOC concerning a discrete act within the 300-day statutory window, the Title VII claim is time-barred and the plaintiff may not recover for that adverse action—discriminatory or not. *Id.* at 839. Of particular relevance here, discrete discriminatory or retaliatory acts that fall outside the 300-day statute of limitations "are time-barred even though they may relate to other discrete acts that fall within the statute of limitations." *Lucas* v. *Chi. Transit Auth.*, 367 F.3d 714, 723 (7th Cir. 2004) (citing *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 112–13 (2002)). Put another way, "timely filed discrete acts" like the 2022 termination "cannot save discrete acts that are related but not timely filed." *Lucas*, 367 F.3d at 723–24. The same is true for Section 1981 claims. *See Pruitt* v. *City of Chi.*, 472 F.3d 925, 927 (7th Cir. 2006). Thus, even if the argument were not waived, it would run headlong into extensive Seventh Circuit and Supreme Court precedent to the contrary.

With the 2015 incident off the table, Vargas's causation theory cannot prevail. At no point in his briefing does Vargas argue that any protected activity other than his 2014-2015 complaints about Giza (and his subsequent 2015 suspension) caused his termination. (*See* dkt. 52 at 16–19.) It is essential that a plaintiff draw such a connection. *See Malin*, 762 F.3d at 561; *Duah* v. *ABM Parking Servs., Inc.*, No. 15 C 1205, 2016 WL 4530309, at *7 (N.D. Ill. Aug. 30, 2016) (rejecting "vague[]" assertions that fail to identify "the specific protected activity for which [the plaintiff] was allegedly retaliated against"). To be sure, Vargas references other protected activities, including both "internal complaints" and the filing of EEOC charges, both in his Amended Complaint and in his briefing at summary judgment (*see* dkts. 14 ¶¶ 1, 15, 19–21,

11

29; 52 at 1–12; R-DSOF ¶¶ 66–67; R-PSOAF ¶¶ 45–46), but such passing references cannot, without some argument from Vargas, satisfy the causation element of a retaliation claim. *See Williams* v. *Bd. of Educ. of City of Chi.*, 982 F.3d 495, 511 (7th Cir. 2020) (rejecting barely developed arguments). Identifying "a distinct protected activity as the trigger for a particular adverse employment action is essential to determining whether there is a causal connection between the two." *Fails* v. *Bd. of Trs. Univ. of W. Fla.*, No. 22 C 7026 TKW HTC, 2023 WL 5666438, at *9 (N.D. Fla. Sept. 1, 2023). Merely "listing alleged protected activities and alleged adverse actions without connecting them in any way," and thus forcing the court "to infer which adverse actions … arose from what protected conduct," is not sufficient. *Thacker* v. *HSBC Bank USA, N.A.*, No. 22 C 7120 GHW, 2023 WL 3061336, at *7 (S.D.N.Y. Apr. 24, 2023).

In short, because the undisputed material facts show that Vargas cannot establish the causation element of his retaliation claims, ComEd is entitled to summary judgment on Counts II and IV.

## CONCLUSION AND ORDER

Because Vargas's discrimination and hostile work environment claims are waived and no triable disputes of material fact exist on the remaining retaliation claims, ComEd's motion for summary judgment (dkt. 46) is granted in its entirety.

Date: March 22, 2024

_____
U.S. District Judge Joan H. Lefkow